NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| T-MOBILE NORTHEAST LLC (f/k/a Omnipoint Communications Inc.), | : : | Civil Action No. 11-2341 (SDW) (MCA) |
| Plaintiff, | : : : | |
| v. | : : | **OPINION** |
| Borough of Leonia Zoning Board of Adjustment, | : : : | January 10, 2013 |
| Defendant. | : : : | |

**WIGENTON**, District Judge.

Before the Court is plaintiff T-Mobile Northeast LLC's ("T-Mobile" or "Plaintiff") Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56(c) ("Motion"), in this matter, versus defendant Borough of Leonia Zoning Board of Adjustment ("Board," "Borough," or "Defendant").

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. § 1391. This matter is decided without oral argument pursuant to Fed. R. Civ. P. 78.

For the reasons stated below, this Court grants Plaintiff's Motion.

## FACTUAL AND PROCEDURAL HISTORY

T-Mobile is a wireless telecommunications service provider licensed by the Federal Communications Commission ("FCC"). (Pl. Statement of Material Facts ("SOF")[1] at ¶ 1.) In order to provide wireless service, T-Mobile creates and maintains a network of digital "cell sites." (SOF at ¶ 2.) The cell site signal coverage overlaps in a grid pattern, maximizing cell

---

[1] The SOF item that was opposed by Defendant is paragraph 58. (Def.'s Opp'n 2.)

phone service areas for consumers.  (*Id.*)  In geographic locations where there are no cell sites, there is no T-Mobile service for users.  (*Id.*)

T-Mobile has developed a signal "network design standard" identifying the level of radio frequency, and the necessary signal capacity, to serve their users.  (SOF at ¶¶ 3, 6.)  T-Mobile used computer modeling, a cell signal propagation study and field testing to determine that they had a significant gap in service in the Borough of Leonia.  (*See* SOF at ¶¶ 10-11, 26-28.)  T-Mobile's expert, Richard Conroy ("Conroy"), determined that the gap in coverage "[e]xtends approximately 0.36 mile east, 0.37 mile southeast, 0.2 mile south, 0.24 mile southwest, 0.27 mile west and 0.36 mile northwest" of T-Mobile's proposed site for antenna installation, 222 Christie Street, Leonia, New Jersey (the "Building").  (Pl. Ex. A, Conroy Report ¶ 3.)  Plaintiff asserts that the coverage gap "is more than a mere few blocks and larger than a few dead spots," and, if addressed, Plaintiff could service approximately 2,009 additional residents, as well as vehicular traffic in the area.  (SOF at ¶¶17-21.)

On or about March 5, 2009, T-Mobile submitted an application to the Defendant for a use variance, and for approval to collocate antennas and equipment at the apartment Building located at 222 Christie Street in Leonia (the "Building").  (*See* SOF at ¶¶ 12-13.)  The Building is the tallest building in Leonia.  (Pl. Ex. A, Avin Report, 5.)  It is located in the "B Multi-Family Dwelling" zone.  (*See* Pl. Ex. L, Borough of Leonia Zoning Board of Adjustment Resolution, ("Resolution") ¶ 4.)

Specifically, T-Mobile sought to collocate eight antennas directly to the exterior of the Building and install three equipment cabinets in the Building's courtyard (collectively, the "Proposed Facilities").  (*See* SOF at ¶ 13.)  The use variance is required because the Building is in a "B Multi-Family Zone," and the height of the Proposed Facilities would exceed that allowed

2

by the zoning ordinance,  Borough of Leonia, N.J., Code §§ 102-9, 290-82(D).  (SOF at ¶¶ 56-57.)  The Proposed Facilities would be mounted directly onto the Building, and the three cabinets would be located on the ground in the Building's courtyard and would be hidden from public view.  (SOF at ¶¶ 13, 52-54.)

T-Mobile's wireless communications competitor, Sprint, has placed antennas and other equipment on top of the Building where the Proposed Facilities would be located.  (SOF at ¶ 118-19.)  In 2003, the Borough denied Sprint's application to place antennas and other facilities on the Building.  (SOF at ¶ 120.)  After Sprint sought judicial review of the denial, a ruling by the Superior Court of New Jersey, Appellate Division, in *Sprint Spectrum, L.P. v. Zoning Board of Adjustment of the Town of Leonia*, 360 N.J. Super. 373 (2003), permitted Sprint to locate its antennas on the Building.  (SOF at ¶ 120-21.)  Sprint currently has several antennas mounted on the Building exterior in the same way T-Mobile intends to install its own facilities.  (*See* SOF at ¶¶ 122-25.)  Sprint's antennas and equipment cabinets extend above the roofline of the Building. (*See* SOF at ¶ 124-26.)  Sprint's wireless equipment extends higher above the roofline than T-Mobile's Proposed Facilities will.  (*See* SOF at ¶ 126.)

At T-Mobile's application hearing, the Borough's consultant, Bernard Nelson ("Nelson"), acknowledged the existence of a gap in T-Mobile's coverage, but disagreed about the size of the gap.  (*See* SOF at ¶ 37; Pl. Ex. I at 1.)  According to Nelson, T-Mobile's opinion about the size of its gap is based on its expert's map of a lack of stronger-than-needed signal strength that sufficiently serves more of Leonia than Plaintiff claims.  (*See* Pl. Ex. I at 1.)  James Bach ("Bach"), who was Chairman of the Board at the time of the application hearing, acknowledged that there was a need for T-Mobile's gap in coverage to be filled and that no permitted sites satisfied the need.  (*See* SOF at ¶ 38.)  However, Defendant's expert, Nelson, opined that

locating the Proposed Facilities at the Building would only remedy approximately 60% of the gap and additional sites would be needed for the other 40%. (*See* Pl. Ex. I at 2.)

In satisfaction of the applicable zoning ordinance requirements, T-Mobile conducted an investigation of alternate cell site locations.  (SOF at ¶¶ 39-41.)  T-Mobile did not consider the three alternate locations investigated to be appropriate alternatives because each required that new structures be built, or the potential wireless signal would not adequately cover the gap.[2] (*See* SOF at ¶¶ 42-48.)[3]  T-Mobile further determined that there were no appropriate pre-existing structures that were at least 300 feet from a school, no sites outside of the Borough that would cover the coverage gap, and no alternate available sites that are zoned to permit cell towers. (*See* SOF at ¶¶ 49-51.)

The Board held eight public hearings from April 27, 2009, to December 16, 2010, concerning T-Mobile's application.  (*See* SOF at ¶ 59.)  At the April 22, 2010 hearing, Plaintiff's expert, William Masters ("Masters"), testified that T-Mobile's proposed use satisfies the criteria of New Jersey's zoning laws.  (*See generally*, Pl. Ex. E.)  At the Board's November 18, 2010 hearing, the Board's planning expert, Christine Cofone ("Cofone"), testified regarding the Proposed Facilities and the Building.  (*Id.*)

On March 24, 2011, the Board passed a Resolution denying T-Mobile's application.  (*See* Resolution; Pl. Ex. L.)  The Resolution listed the non-conforming conditions and provided that T-Mobile's application was denied because:

> the proposed telecommunications antennas and related equipment cabinets would constitute a nonconforming commercial use in a residential zone in violation of

---

[2] The three sites were: 1) property owned by the Department of Public Works approximately 1.2 miles northwest of the gap; 2) property in the LI Zone approximately one mile northwest of the gap; and 3) property in the P1/P3 Zone approximately 0.6 mile west of the gap.  (SOF at ¶¶ 43, 45, 47.)

[3] Alternative site "A," the "DPW Property," purportedly "provides no coverage to the area of the gap planned to be filled" by the Building.  (Pl. Ex. A, Conroy Report ¶ 23.)  Alternative site "B," the "LI Zone" property, also "provides no coverage."  (*Id.*)  Alternative "C," the "P1/P3 Zone" property would provide coverage to a portion of the gap that is a mere 1/10th mile in length.  (*Id.*)

ordinance section 290-19, the placement of the antennas on the exterior of the building would result in encroachments into the required yard setbacks in violation of ordinance section 290-20, and because the height of the proposed antennas and related equipment would exceed the maximum height of two (2) stories/25 feet permitted by ordinance section 290-20; and . . . . the proposed installation would also be contrary to the provisions of ordinance section 102-9H(1) which only permits wireless telecommunications antennas on existing structures or rooftops on an existing business, industrial, office, utility or institutional structure located on Broad Avenue to Park Avenue (north side) to the south side of Woodridge Avenue and 200 feet east or west on Broad Avenue except within 300 feet of a school, and/or ordinance section 102-9A which restricts placement of wireless communication antennas to freestanding tower monopoles in the P zone district abutting the OB Office Building zone and at the Leonia DPW facility located at Block 103, Lots 2 and 3[.]

(Resolution at 1-2.)  The Resolution also stated "that the proposed site meets the requirements of the Applicant as it fills the gap or deficiency in its service area . . . [but] that the site only partially fills the existing coverage gap."  (Resolution at ¶ 23.)  The Board considered the expert opinions on signal coverage contradictory.  (*See Id.*)  The Board additionally concluded that granting T-Mobile a variance would not "benefit the community. . . [,] and that "alternate, less intrusive sites are available within the Borough."  (Resolution at ¶ 29.)  The Board stated that the "other locations to the south and east would be better suited to more completely fill the coverage gap[,]" although specific locations were not noted.  (Resolution at ¶ 28.)

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be

insufficient to permit the nonmoving party to carry its burden of proof.  *See Celotex Corp. v.*
*Catrett*, 477 U.S. 317, 322-23, 327 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant
who must set forth specific facts showing a genuine issue for trial and who may not rest upon the
mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.
2001).  The court may not weigh the evidence and determine the truth of the matter; it must
instead determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at
249.  In doing so, the court must construe the facts and inferences in a light most favorable to the
nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (internal
citation omitted).  The nonmoving party "must present more than just 'bare assertions,
conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v.*
*U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If
the nonmoving party "fails[s] to make a sufficient showing on an essential element of [its] case
with respect to which [it] has the burden of proof," then the moving party is entitled to judgment
as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

**DISCUSSION**

Plaintiff argues that summary judgment should be granted in its favor because the
Board's denial of Plaintiff's application violates limitations set forth in Section 332(c)(7)(B) as
follows: 1) the Board's decision unreasonably discriminated against the Plaintiff under the
Telecommunication Act of 1996 (the "TCA"); 2) the Board's denial of Plaintiff's application has
the effect of prohibiting wireless service, in violation of the TCA; and 3) the Board's denial is
not supported by substantial evidence in the record. (*See* Pl. Br. at 14, 17, 29.)  These points are
discussed below.

1.      *Whether Defendant's decision unreasonably discriminates against Plaintiff*

"The TCA does not prohibit all discrimination against providers, only unreasonable discrimination." *Omnipoint Commc'ns Enters. v. Zoning Hearing Bd. of Easttown Twp.,* 331 F.3d 386, 395 (3d Cir. 2003) (citation omitted). "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof. . . shall not unreasonably discriminate among providers of functionally equivalent services[.]" *Ogden Fire Co. No. 1 v. Upper Chichester Twp.*, 504 F.3d 370, 392 (3d Cir. 2007) (internal citation and quotations omitted). To prevail on an unlawful discrimination claim under Section 332(c)(7)(B)(i)(I) of the TCA, a wireless telecommunications service provider must prove that: 1) its services are "functionally equivalent" to those of another provider allowed to install facilities at a location; and 2) the governmental body "unreasonably discriminate[d] among providers." *Id.* (quoting *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 267 (3d Cir. 2002). That is, it is considered unlawful discrimination where the "municipality favors one provider by permitting it to locate in a particular area at the exclusion of others, thereby creating unfair competitive advantage." *Nextel W. Corp.* at 267.

A wireless service provider can meet the first prong of the unreasonable discrimination test by establishing that its services are "functionally equivalent" to those of another provider allowed to install facilities at a location. *See Ogden Fire Co. No. 1*, 504 F.3d at 392. This first prong focuses on "the telecommunications services the entity provides, not on the technical particularities (design, technology, or frequency) of its operations." *Id.* (internal citation and quotations omitted). In *Ogden Fire Co. No. 1*, Ogden Township did not allow Sprint to build a tower, but had previously allowed Metro Phone to build a tower. *Id.* at 392-93. The residential areas surrounding Metro Phone's location were comparable to Sprint's proposed location, and

the zoning was identical. *Id.* at 394. Accordingly, the court found "that although Metro Phone, like Sprint, is a provider of wireless communications services, it was treated differently than Sprint." *Id.* Thus, the Third Circuit held that the wireless service provider (Sprint) satisfied the first prong of the unreasonable discrimination test. *Id.*

A wireless service provider can meet the second prong of the TCA test, unreasonable discrimination among providers, by demonstrating that the "[existing] provider is similarly situated, i.e., that the 'structure, placement or cumulative impact' of the existing facilities makes them as or more intrusive than the proposed facility." *APT Pittsburgh Ltd. v. Penn Twp.,* 196 F.3d 469, 480 n.8 (1999) (citation omitted). For example, in *Ogden Fire Co. No. 1*, the existing tower was larger in diameter, and taller, than the proposed tower, but the town still rejected the plan to erect the proposed tower. *Ogden Fire Co. No. 1*, 504 F.3d at 394. In *Ogden*, the plaintiff demonstrated "that the structure, placement or cumulative impact of the existing. . . facility makes it more intrusive than the proposed [facility,]" and the court found that the second prong of the unreasonable discrimination test was satisfied. *Id.*

In the instant matter, it is undisputed that Sprint, a competitor of T-Mobile, has facilities installed on the Building that is the site for T-Mobile's Proposed Facilities. (*See* SOF at ¶¶ 118-19.) Plaintiff's expert, Uri Avin ("Avin"), testified that Plaintiff's Proposed Facilities are similarly situated to Sprint's facilities on the Building, and his testimony was not rebutted. (*See* Pl. Br. at 16; Avin Report at 9.) T-Mobile intends to install its facilities in a similar manner as Sprint, mounted to the façade of the building, as well as mounted to Sprint's pre-existing equipment screen. (SOF at ¶¶ 122, 125.) Additionally, T-Mobile's Proposed Facilities will not be higher than Sprint's pre-existing facilities. (SOF at ¶¶ 126-27.) Therefore, T-Mobile has satisfied both prongs of the unreasonable discrimination test under the TCA.

8

2.      *Whether Defendant's decision prohibits Plaintiff from providing service in violation of the TCA*

Federal district courts review "effective prohibition" claims under the TCA de novo. *Sprint Spectrum L.P. v. Zoning Bd. of Adjustment of Paramus*, No. 09-4940 (JLL), 2010 WL 4868218, at *8 (D.N.J. Nov. 22, 2010); *see also*, *VoiceStream Minneapolis, Inc. v. St. Croix Cnty.*, 342 F.3d 818, 833 (7th Cir. 2003); *National Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002). Courts must be mindful that "Congress enacted the TCA in order to create a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services. . .[, and] expressly preserves traditional [zoning] authority. . . , but places several substantive and procedural limits upon that authority. . . ." *Sprint Spectrum L.P*, 2010 WL 4868218 at *8 (internal citations and quotation marks omitted).

"The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof … shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Indeed, the TCA "places several substantive and procedural limits upon that authority when it is exercised in relation to personal wireless service facilities[.]" *APT Pittsburgh Ltd.,* 196 F.3d at 473. The purpose of the Section 332(c)(7) was to reduce "the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).

The Third Circuit has adopted the following two-part test for whether a denial of a wireless service application constitutes an unlawful prohibition of service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II): 1) whether there is a significant gap in wireless service and 2)

whether the proposed location is the least intrusive on the values the Board's denial sought to serve. *See, e.g.*, *APT Pittsburgh*, 196 F.3d at 480 (discussing the "least intrusive means" test); *Sprint Spectrum L.P.*, 2010 WL 4868218, at *9 (explaining the two-part test and noting that the FCC now interprets "significant gap" as a gap in one provider's coverage, not a total gap in coverage that remains unmitigated by any provider).

### a.   Significant Gap

As recently as 2003, the Third Circuit defined a "significant gap" in a wireless provider's service as a gap in service that was not being serviced by any other providers. *See Omnipoint Commc'ns Enters. L.P.*, 331 F.3d at 398 (3d Cir. 2003).[4]   However, in November 2009, the FCC specifically rejected the "one provider" interpretation of the effective prohibition clause in favor of a standard that looks at the provider's gap in its own service. *See Ruling to Clarify Provisions of 332(C)(7)(b)*, 24 F.C.C.R. 13994 ¶ 56-61 (Nov. 18, 2009).   The FCC stated "that the fact that another carrier or carriers provide service to an area is an inadequate defense under a claim that a prohibition exists, . . . " and ruled that to establish an effective prohibition under the TCA, a provider need only show that it has a "significant gap" in its own wireless service coverage. *Id.* at ¶¶ 56-66.   The FCC is an agency charged with administering its own ambiguous statute, and as such, the FCC "remains the authoritative interpreter" of a statute, such as the TCA, despite judicial precedent to the contrary. *Nat'l Cable & Telecomm. Assn. v. Brand X Internet Servs.*, 545 U.S. 967, 983 (2005); *Borough of Paramus*, 2010 WL 4868218, at *9.   This "one provider" rule, as it had come to be known, has been rejected by other circuits, but not addressed again by the Third Circuit since the FCC ruling in 2009. *See, e.g.*, *T-Mobile Central, LLC v. Charter*

---

[4] The *APT Pittsburgh* decision provided the "significant gap" standard for the Third Circuit. 196 F.3d at 478-80.   In *APT Pittsburgh,* the court held that there is only a "significant gap" in wireless service, for the purposes of an "effective prohibition" under § 332(c)(7)(B)(i)(II) of the TCA, where the gap in service is "not already served by another provider." *Id.* at 480.   The court reasoned that this interpretation supported the "zoning authority to local governing bodies." *Id.* at 479.

*Twp.*, 691 F.3d 794, 806-08 (6th Cir. 2012) (holding that "[i]n light of the FCC's endorsement of the standards used by the First and Ninth Circuits," the Sixth Circuit adopts the position that a provider's gap in its own service satisfies the TCA's "significant gap" requirement); *Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 631-33 (1st Cir. 2002); *Metro PCS Inc. v. City and County of San Francisco*, 400 F.3d at 732.

The parties agree that there is a significant coverage gap in T-Mobile's service in Leonia. (*See* Def. Opp'n at 4 (acknowledging T-Mobile's "major coverage gap," but arguing that the Proposed Facility would not alleviate it).)  At the application hearing, the Borough's consultant, Nelson, acknowledged the existence of a gap in T-Mobile's coverage, but disagreed with the Plaintiff's expert about the size of the gap.  (SOF at ¶ 37.)  The main point of contention between the parties is the extent to which wireless signal propagated from the Proposed Facilities will mitigate the coverage gap. (*See* Def. Opp'n. 7-8.)  Nelson, testified that, in his opinion, the Proposed Facilities would not cover the entire gap, but only about 60% of the gap.  (SOF at ¶¶ 769-71.)  Nelson opined that locating the Proposed Facilities at a site to the southeast of the Building would provide more complete coverage than the Building location, although he admitted that he did know of, and had not investigated, any viable sites within the southeast region he spoke of.  (SOF at ¶¶ 72-74, 77.)

Defendant claims that:

the Board's denial does not have the effect of prohibiting wireless service. Rather, T-Mobile does provide wireless service in the Borough of Leonia and the board's conclusion that the proposed site does not substantially fill the coverage gap is well supported by the record in that T-Mobile did not meet its burden in providing the 'positive criteria.'  In sum, the Board is not prohibiting wireless service, it is seeking to ensure its residents that the best wireless service alternatives are available for its citizens.

(Def.'s Opp'n at 12-13.)

11

The extent to which the service gap will be mitigated has not been part of the "significant gap" inquiry. *See generally APT Pittsburgh* at 478-80. Additionally, the Third Circuit declined to define a threshold "size" of gap, over which the service gap becomes "significant." *See Cellular Telephone Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 F.3d 64, 70 (3d Cir. 1999) ("We do not attempt here to define what constitutes a "significant" gap in local wireless services. Rather, we will leave it for the district court to determine, if necessary, whether there is a significant gap in service and, if so, whether there are any less intrusive means for closing that gap.").[5] In this instance, T-Mobile, by the Defendant's acknowledgment has a "major coverage gap."[6] The record shows that the Proposed Facility would fill a majority of the gap (at least approximately 60%). Based on the evidence before this Court, and as neither party in this matter contests that there is a gap in T-Mobile's service coverage within the Borough of Leonia that is significant, the Court finds that it is a "significant gap" for the purposes of this inquiry.   (Def.'s Opp'n at 4.)

<u>b. Least Intrusive Means</u>

After a wireless service provider has demonstrated that a "significant gap" in service exists, the provider must make some showing as to the intrusiveness of its proposed means of closing that gap, which is evaluated under the "least intrusive means" standard adopted by the Third Circuit. *See, e.g.*, *APT Pittsburgh*, 196 F.3d at 480; *Borough of Paramus*, 2010 WL 4868218, at *12. Under the "least intrusive means" test, the wireless provider must show that the proposed facility will fill its gap utilizing means that are the "least intrusive on the values that the denial sought to serve." *APT Pittsburgh*, 196 F.3d at 480. The least intrusive means test

---

[5] On the contrary, the Third Circuit assigned the job of determining what constitutes a "significant gap" to the district court, holding only that a "significant gap" is one in which "a remote user of those services is unable either to connect. . .   or to maintain a connection capable of supporting a reasonably uninterrupted communication." *Cellular Telephone Co.*, 197 F.3d at 70.
[6] Defendant notes that the gap is largely representative of in-building deficiencies.  (*See* Def.'s Opp'n 7-8.)

does not require elimination of all theoretically possible alternatives, but requires that the wireless provider show that "a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc." *Id.*; *see also Borough of Paramus*, 2010 WL 4868218, at *12.

According to the record before this Court, the Proposed Facility is the least intrusive means of closing the coverage gap in Leonia. Defendant's planning expert, Cofone, testified that the Proposed Facilities would negatively impact the community by "eroding the zone plan and visibility." (Pl. Ex. G, 11/18 Trans. at 65:1-6.) However, viable, less intrusive, alternate sites within the non-residential zoning district, that would be appropriate for the cell site, are not identified and supported by the record. (*See generally* Pl. Exs. B-H.) T-Mobile's expert, Avin, testified that a facility located to the southeast of the Building would require the purchase and demolition of approximately six houses, and the construction of a new tower. (*See* SOF at ¶ 98.) The Borough's Code, and Master Plan, both discourage the construction of new towers or facility placement in residential zones. (*See* SOF at ¶ 96.) Consequently, the construction of a new tower would not be consistent with the values that the Borough's zoning code seeks to serve. (*See* SOF at ¶¶ 98-99.)

Additionally, Cofone stated she did not investigate any sites and could not testify about other location options. (*See* SOF at ¶ 92.) Similarly, Nelson mentioned a site to the southeast of the Building, but he also had not investigated any particular sites, and did not identify any specific, viable sites to the southeast of the Building, or elsewhere. (SOF at ¶¶ 72-74, 77.) Further, the Chairman of the Board at the time of the application hearing, Bach, acknowledged

that there was a need for T-Mobile's gap in coverage to be filled, and that no permitted sites satisfied the need.  (*See* SOF at ¶ 38; Pl. Ex. H, Tr. Dec. 16, 2010 at 25:13-17.).)

Defendant is also concerned about the aesthetic impact of the Proposed Facilities. Cofone testified that the Proposed Facilities would have equipment visible in the neighborhood. (Pl. Ex. G, Tr. Nov. 18, 2010 41:3-42:1, 61:21-65:1-6.)    Specifically, Cofone testified "the detriment is that you're introducing more antennas that will be visible from the adjoining residential neighborhoods in an area where they are not permitted.  (Tr. Nov. 18, 2010 61:23-62:1.)    Cofone stated "I don't conclude that [the Proposed Facilities] will not have any substantial detriment to the visual impairment and the aesthetics of the zone"; however, the record does not support the position that it will cause visual detriment more so than any other alternative.  (Tr. Nov. 18, 2010 41:3-42:1.)[7]

Notably, T-Mobile's antennas would be collocated where Sprint's structure is already present.  In her testimony, Cofone addressed this point as follows: "[W]hile I understand your point, that, yes, the [B]uilding is attractive today and it does have collocated facilities on it, that in my opinion does not rise to the level of we can add more collocated antennas because they are there today."[8] (Tr. Nov. 18, 2010 62:11-15.)  However, Plaintiff's expert, Avin, opined that the installation of a new tower in Leonia would have a larger negative visual impact than that of the Proposed Facility.  (*See* SOF at ¶103.)  Avin concluded that the Proposed Facility at the Building is the "least visually intrusive," in addition to being the least intrusive means for closing the gap. (*See* SOF ¶ 104.)  T-Mobile has shown that it reasonably investigated the possibility that there

---

[7] "Under New Jersey law, a zoning board may deny a variance to construct a monopole based on aesthetics, but its reasoning must be supported by substantial evidence.  A few generalized expressions of concern with 'aesthetics' cannot serve as substantial evidence." *Sprint Spectrum L.P.*, 2010 WL 4868218 *15 (internal citations and quotation marks omitted).

[8] There were also other general statements made at the hearings regarding the aesthetic impact of what is already present at the Building from Sprint.  (Tr. Nov. 18, 2010 26:9-22.)  The record does provide, however, that overall Plaintiff's equipment and Proposed Facilities will be less visible than those Sprint currently has present at the Building. (SOF ¶¶ 124-127; Tr. Apr. 22, 2010 76:1-23.)

were less intrusive means of providing wireless service in its "significant gap" in service area, and did not find one.

T-Mobile has satisfied both prongs of an "effective prohibition" claim under the TCA.

3.   *Whether Defendant's denial is supported by substantial evidence*

Section 332(c)(7)(B)(iii) of the TCA states, "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).   "Substantial evidence is not a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F.3d 403, 408 (3d Cir. 1999) (internal quotations omitted).  To determine whether substantial evidence exists, "a court views the record in its entirety and takes account of evidence unfavorable to the agency's decision."   *Id.* (citing *American Textile Mfs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981)). [9]

For Section 332(c)(7)(B)(iii) of the TCA, "the court's task is to determine whether the decision, as guided by local law, is supported by substantial evidence." *Cellular Telephone Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 at 72. "Under New Jersey law, local zoning officials must weigh the positive and negative factors associated with a requested zoning variance to determine whether, on balance, those factors weigh in favor of granting or

---

[9]   Under the New Jersey MLUL, a decision of a zoning board may be set aside only when it is "arbitrary, capricious or unreasonable," but "[s]o long as the power exists to do the act complained of and there is substantial evidence to support it, the judicial branch of the government cannot interfere. . . . Thus, both § 332(c)(7)(B)(iii) and New Jersey law employ the substantial evidence standard."

*Sprint Spectrum L.P.*, 2010 WL 4868218 *13 (internal citations omitted).

rejecting the request."  *Id.*  It must be demonstrated that the requirements for a variance under

N.J.S.A. 40:55D-70(d) have been met.  Pursuant to N.J.S.A. 40:55D-70(d),

> No variance or other relief may be granted under the terms of this
> section, including a variance or other relief involving an inherently
> beneficial use, without a showing that such variance or other relief
> can be granted without substantial detriment to the public good and
> will not substantially impair the intent and the purpose of the zone
> plan and zoning ordinance.

N.J.S.A. 40:55D-70(d) essentially requires

> an applicant to prove both positive and negative criteria to obtain a
> use variance. In general, the positive criteria require that an
> applicant establish "special reasons" for granting the variance . . .
> The negative criteria require proof that the variance "can be
> granted without substantial detriment to the public good" and that
> it "will not substantially impair the intent and purpose of the zone
> plan and zoning ordinance."

*Smart SMR of New York, Inc.*, 152 N.J. at 323 (1998) (internal citations omitted).[10]

For commercial uses, the positive criteria factor is satisfied "if the use is particularly

suited for the proposed site." *Smart SMR of New York, Inc. v. Fair Lawn Bd. of Adjustment*, 152

N.J. 309, 332 (1998); *see also Cell South of N.J. v. Zoning Board of Adjustment of W. Windson

Twp.*, 172 N.J. 75, 82 (2002).  "The applicant can prove particular suitability by demonstrating

the need for a facility at the proposed location."  *New York SMSA v. Bd. of Adjustment of

Weehawken*, 370 N.J. Super. 319, 336 (N.J. Super. Ct. App. Div 2004).  When making a decision

regarding the particular suitability of wireless communication service facilities, courts examine

---

[10] A four-part guiding test for municipal boards to use when balancing negative and positive criteria was set forth prior to the amendment of N.J.S.A. 40:55D–70(d).  *See Sica v. Bd. of Adjustment of Wall*, 127 N.J. 152, 165 (N.J. 1992); *see also Salt & Light Co. v. Willingboro Twp. Zoning Bd. of Adj.*, 423 N.J. Super. 282, 289-90 (App.Div.2011).  "First, the board should identify the public interest at stake." *Sica*, 127 N.J. at 165.  "Second, the Board should identify the detrimental effect that will ensue from the grant of the variance." *Id.* at 166.  "Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use[,]" and "[i]f so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions." *Id.* (internal citations omitted).  The last step is the requirement for the Board to weigh "whether, on balance, the grant of the variance would cause a substantial detriment to the public good."  *Id.*

whether the "use promotes the general welfare because the site is particularly suitable for the use." *Id.* at 335.

First, whether or not a facility promotes the general welfare can be satisfied by showing that an FCC license was issued to the provider. *Id.* at 355, n.1 (stating that "arguably, an applicant seeking to develop a communications facility that does not require the construction of a tower or monopole need show nothing besides its FCC license in order to satisfy the positive criteria"). T-Mobile has an FCC license. (*See* SOF ¶ 1.)

Second, where plaintiffs must show that "the site is particularly suitable for the use," T-Mobile has met that standard by showing that its coverage gap will be mitigated by placement of its Proposed Facilities on the Building. Plaintiff's expert, Masters, testified that T-Mobile's proposed use satisfies the "positive criteria" of New Jersey's zoning laws because 1) the Building is "a particularly suitable site for a wireless telecommunications facility," and locating facilities at the Building would meet Plaintiff's "technical requirements" for boosting signal (Tr. Apr. 22, 2010 67:24-25, 68:1-15), and that 2) T-Mobile is licensed by the FCC, and as such, is deemed to serve the general welfare (*Id.* at 72:1-7). Further, the Building is particularly suitable for the Proposed Facilities for several reasons including, but not limited to, being an existing tall structure, its proximity to a major traffic connector, and minimizing the number of towers in Leonia. Also, although otherwise zoned, there is a current nonconforming use of the Building. *See Cellular Tel. Wireless v. Board of Adjustment of Twp. of N. Bergen*, 142 F. App'x 111, 116 (3d Cir. 2005).

Defendant's expert, Cofone, stated her opinion that the Board should hear evidence as to whether another potential site to the south of the Building exists that may be even more particularly well-suited, and that T-Mobile's evaluation of the Building's particular suitability

was based solely on the opinion of its own expert.  (Tr. Nov. 18, 2010 25:5-24, 27:13-25, 28:1-9.)  However, Cofone also testified that she did not "really take exception with anything that [Masters] testified to in the positive criteria." (*Id.* at 36:12-17.)  Yet, the Resolution provided that the "Board finds from the testimony and evidence presented at the public hearings, that the applicant has not met its burden of proving '*positive criteria*'" that the proposed site was particularly suited for the proposed use.  (Pl.'s Ex. L ¶ 27)(emphasis added).  This Court finds that substantial evidence in the record does support that Plaintiff satisfies the "positive criteria."

When weighing the negative criteria, "the burden is on the applicant to prove that the variance can be granted 'without substantial detriment to the public good.'"  *Cellular Telephone Co. v. Zoning Bd. of Adjustment of Harrington Park*, 90 F. Supp. 2.d 557, 561-62 (2000) (quoting *Smart*, 152 N.J. at 323.)  Additionally, "[w]hen the use is not an inherently beneficial one, the applicant must also demonstrate through enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of master plan and zoning ordinance." *Id.* at 562 (internal citations and quotations omitted).  While the New Jersey Supreme Court has ruled that the construction of new towers is not an inherently beneficial use, the court distinguished antennas and has yet to rule as to whether antennas affixed to an existing structure are inherently beneficial.[11]  *See Smart*, 152 N.J. at 331.  Thus, this Court will also review whether the variance sought is consistent with the intent and purpose of the ordinance.

Plaintiff and Defendant's experts disagree regarding whether there would be a negative impact on the surrounding neighborhood (SOF at ¶¶ 64-65).  The Board determined that Plaintiff failed to satisfy the negative criteria.  (Pl.'s Ex. L at ¶ 30.) However, Plaintiff has sufficiently

---

[11] Although the New Jersey Supreme Court "declined to declare monopoles to be inherently beneficial uses, it did state that '[a] commercial use serves the general welfare and thereby satisfies the positive criteria if the use is particularly suited for the proposed site.'" *Sprint Spectrum L.P.*, 2010 WL 4868218 *13 (quoting *Smart*, 152 N.J. at 336).

established that the "variance can be granted without substantial detriment to the public good" and that the variance sought is not inconsistent with the intent and purpose of the ordinance. *See Smart*, 152 N.J. at 332 (citing *Sica*, 127 N.J. at 156); *see also Sprint Spectrum L.P.*, 2010 WL 4868218.

The evidence of record shows that: 1) both parties agreed that similar antennas and equipment for Sprint already exist on the roof at issue (SOF at ¶ 84); 2) the Board's expert, Cofone, provided general statements regarding the negative aesthetic impact on the neighborhood surrounding the Building with the existing Sprint antennas and equipment (SOF at ¶ 84); and 3) no expert presented by the Board disputed the conclusion that "locating wireless facilities on an existing structure is more desirable than constructing a new tower" (SOF at ¶ 76). Further, no specific better alternative location has been identified. These material facts are not in dispute.

Additionally, the variance at issue here is "not inconsistent with the intent and purpose of the master plan and zoning ordinance." *Smart*, 152 N.J. at 323. The Borough of Leonia Zoning Code's purpose is to "[e]ncourage the collocation of wireless telecommunications antennas on as few structures as necessary, rather than locating such antennas each on separate structures." Borough of Leonia, N.J., Code § 290-82(D) (2002). T-Mobile's Proposed Facilities, if installed on the Building, would be placed with Sprint's pre-existing antennas and equipment on the tallest building in the Borough, instead of on a less desirable, newly constructed tower. As such, the proposed use selected by T-Mobile is consistent with the intent and purpose of Leonia's zoning ordinance, and does not substantially impair the neighborhood surrounding the proposed site.[12]

---

[12] *See Sprint Spectrum, L.P. v. Zoning Board of Adjustment of the Town of Leonia*, 360 N.J. Super. 373, 376 (2003) (discussing the Sprint facilities and concluding that "the proposed telecommunications facilities will serve the

Substantial evidence in the record does not support the Board's denial.  T-Mobile has satisfied New Jersey's test for granting a zoning variance by demonstrating that on balance the positive and negative factors weigh in favor of its plan to build the Proposed Facilities.

As such, this Court may order the required approvals be granted, rather than remand this matter to the local authority.  *See Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F.3d at 410; *Ogden Fire Co. No. 1*, 504 F.3d at 396.  Based of the above, this Court will enter an order requiring the Board to grant T-Mobile's application and associated permits.

**CONCLUSION**

For the foregoing reasons, this Court **GRANTS** Plaintiff's Motion.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:     Judge Arleo
       Parties

---

general welfare, its benefits to the public will outweigh its potential detriments, and locating the equipment in a residential zone will not substantially impair the intent and purpose of the zone plan or ordinance.")